**L.A.M. RECOVERY, INC.,**
**Plaintiff–Appellant,**

v.

**DEPARTMENT OF CONSUMER AFFAIRS, SR. P.O. Hoffman and City of New York, Defendants–Appellees.**

No. 05–4538.

United States Court of Appeals, Second Circuit.

June 5, 2006.

Ronald Paul Hart, New York, NY, for Plaintiff.

Julian L. Kalkstein, Assistant Corporation Counsel (Michael A. Cardozo, Corpo-

ration Counsel, on the brief), New York, NY, for Defendant.

PRESENT: DENNIS JACOBS and B.D. PARKER, Circuit Judges, and DAVID G. TRAGER,* District Judge.

### SUMMARY ORDER

L.A.M. Recovery, Inc. appeals the July 20, 2005 decision of the United States District Court for the Southern District of New York (Kaplan, J.), granting the motion for summary judgment of New York City ("City") and dismissing LAM's claims challenging, on primarily constitutional grounds, the City's regulations requiring the licensing of tow trucks ("licensing regulations"), *see* NYC Admin. Code § 20–496. LAM's federal challenge to the licensing regulations follows its two (unsuccessful) state court challenges seeking to prevent enforcement of the regulations. We assume the parties' familiarity with the facts, the procedural context, and the specification of appellate issues.

The grant of a motion for summary judgment is reviewed *de novo. See Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). We may affirm dismissal of a plaintiff's complaint on any basis for which there is sufficient support in the record, including grounds not relied on by the District Court. *See EEOC v. J.B. Hunt Transp., Inc.,* 321 F.3d 69, 73–74 (2d Cir.2003).

1. Insofar as LAM's complaint seeks monetary damages for alleged constitutional violations, we construe it as asserting claims under 42 U.S.C. § 1983. *See Dennis v. Higgins,* 498 U.S. 439, 444–45, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991); *see also N. Am. Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233 (2d Cir.

1978) ("[T]he lack of any reference to federal law in the complaint is not controlling.... From the substance of [plaintiff's] allegations, it is clear that the complaint sets forth a claim arising under federal law.").

■ 2. The district court held that the Rooker–Feldman doctrine barred it from exercising subject-matter jurisdiction over LAM's regulatory takings and preemption claims; but that doctrine only applies when a plaintiff complains in federal court of injuries that are *caused by* a state-court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). "A federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 88 (2d Cir.2005). Here, LAM's injuries were caused by a state administrative agency, not by the state courts that let the agency ruling stand. *See Verizon Md., Inc. v. PSC,* 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ("[Rooker–Feldman] has no application to judicial review of executive action, including determinations made by a state administrative agency."). Thus, Rooker–Feldman did not bar the district court from exercising subject matter jurisdiction over any of LAM's claims.

■ Although Rooker–Feldman is not applicable, the prior state court judgment may still collaterally estop LAM from re-

---

* The Honorable David G. Trager, United States District Court for the Eastern District of New York, sitting by designation.

litigating its claims in federal court.[2] *See* 28 U.S.C. § 1738 (requiring federal court to give same preclusive effect to state-court judgment as another court of that state would give); *Exxon*, 544 U.S. at 293, 125 S.Ct. 1517 ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."); *see also Hoblock*, 422 F.3d at 85 ("*Exxon Mobil* teaches that Rooker–Feldman and preclusion are entirely separate doctrines."). Under New York law, collateral estoppel only applies "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir.1995). The Article 78 court did not discuss the takings claim explicitly, but LAM argued the claim in the memorandum of law in support of its Article 78 petition, and the Article 78 court addressed the substance of the claim and necessarily rejected it in denying LAM's petition and deeming "[LAM's] remaining contentions ... without merit." *L.A.M. Recovery v. Dep't of Consumer Affairs*, 193 Misc.2d 754, 749 N.Y.S.2d 862, 865 (N.Y.Sup.Ct.2002). As to LAM's preemption claim, it is clear that LAM raised it in the Article 78 proceeding, *see id.* at 864 ("[T]he petitioner contends that DCA is preempted by federal law from regulating possessors."), and that the court rejected it, *see id.* at 865 ("Nor has the petitioner demonstrated that the regulations are preempted by federal law."). Thus, LAM is collaterally estopped from raising its regulatory takings and preemption claims.

3. LAM's equal protection claim fails on the merits. "[T]he equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest." *Able v. United States*, 155 F.3d 628, 631 (2d Cir.1998). The New York legislature had ample basis for concluding that repossessors warranted coverage under the licensing regulations, whereas certain other classes of business engaged in towing did not. *See generally Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir.1999).

4. LAM lacks standing to challenge New York's licensing requirement under the Dormant Commerce Clause ("DCC"). The DCC confers the individual right to engage in interstate trade free from restrictive state regulation. *See Dennis*, 498 U.S. at 448, 111 S.Ct. 865. To the extent that LAM seeks to vindicate this right on behalf of out-of-state towers, it fails to satisfy the prudential standing requirement that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."). To the extent that LAM seeks to vindicate this right on its own behalf, it lacks standing because it failed to allege an injury

---

**2.** As an intermediate step in its Rooker–Feldman analysis, the district court determined that New York's law of collateral estoppel would preclude LAM's regulatory takings and preemption claims. *See L.A.M. Recovery, Inc. v. Department of Consumer Affairs*, 345 F.Supp.2d 405, 409–11 (S.D.N.Y.2004).

stemming from the application of the licensing requirement in a manner discriminatory to out-of-state interests, and therefore is outside the "zone of interests" to be protected by the DCC. *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 321, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977).

5. Because we dismiss LAM's DCC claim on the ground of standing, we need not consider whether LAM is precluded from bringing a DCC challenge to the licensing requirement by the Article 78 court's determination that 49 U.S.C. § 14501(c)(2) saves the City's licensing requirement from preemption by 49 U.S.C. § 14501(c).

We have considered LAM's remaining arguments and find them to be meritless.

For these reasons, the decision of the district court is **AFFIRMED.**